UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIONEL RUBALCAVA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN JOSE, et al.,<br><br>Defendants. | Case No. 20-cv-04191-BLF   (VKD)<br><br>**ORDER RE DISCOVERY DISPUTES RE WORK PRODUCT PROTECTION**<br><br>Re: Dkt. Nos. 99, 100 |

The parties dispute whether and to what extent plaintiff Lionel Rubalcava has waived attorney work product protection for documentation reflecting his former counsel's investigation in support of Mr. Rubalcava's successful state court habeas petition to vacate his 2003 conviction. Dkt. Nos. 99, 100; Dkt. No. 118 ¶ 143. For the reasons explained below, the Court concludes that Mr. Rubalcava waived work product protection regarding the contents of the witness statements described in Ms. Kaneb's declaration, but that Mr. Rubalcava has not waived work product protection with respect to the witnesses referenced in his complaint and identified in his initial disclosures.

**I.     BACKGROUND**

In this action, Mr. Rubalcava asserts claims for violations of his federal constitutional rights and violations of state law arising from his wrongful conviction for attempted murder. Mr. Rubalcava served more than seventeen years in prison before the Santa Clara County Superior Court vacated his conviction. Dkt. No. 88 at 1. He claims that San Jose police officers and Santa Clara County investigators fabricated evidence and committed other misconduct that led to his wrongful conviction. *Id.* These disputes concern efforts undertaken by counsel on Mr.

Rubalcava's behalf to investigate the circumstances leading to his wrongful conviction.

In 2018, with the assistance of the Northern California Innocence Project ("NCIP"), Mr. Rubalcava filed a habeas petition in Santa Clara County Superior Court. Dkt. No. 118 ¶ 11. That petition was supported by the declaration of Mr. Rubalcava's habeas counsel, Paige Kaneb. A copy of the declaration is attached as an exhibit to one of the discovery dispute submissions. *See* Dkt. No. 100 at 17-23. The declaration includes several assertions recounting statements multiple witnesses made to Ms. Kaneb or her investigators about the crime for which Mr. Rubalcava was convicted and the conduct of law enforcement and investigative officers thereafter. *See id.* The declaration does not attach or refer to any documentation of these interviews; however, Mr. Rubalcava acknowledges that such documentation exists, including "attorney notes, memoranda, and emails memorializing interactions with witnesses." *See id.* at 5.

The County Defendants[1] and the City Defendants[2] ask the Court to order Mr. Rubalcava to produce all documentation of the witness interviews Ms. Kaneb and her team conducted and to which Ms. Kaneb refers in her declaration, as well as "all documentation pertinent to the investigative activity disclosed by [Ms.] Kaneb—including other work product items review[ed], utilized, and/or referred to in reports, memos, notes, etc." Dkt. No. 111 at 3. In addition, the City Defendants ask the Court to order Mr. Rubalcava to produce all other "factual information" gathered by Ms. Kaneb regarding "witnesses referenced in the allegations of Plaintiff's complaint and listed in Plaintiff's initial disclosures." Dkt. No. 99 at 1. At the Court's request, Mr. Rubalcava provided a copy of his privilege log indicating the documents he is withholding as protected work product and that he believes may be within the scope of the parties' dispute. Dkt. No. 111-1.

---

[1] The Court refers to defendants Douglas Kaleas and Brian Geer, former investigators for the County of Santa Clara, as the "County Defendants." *See* Dkt. No. 118, ¶¶ 25, 26.

[2] The Court refers to defendants the City of San Jose and former San Jose police officers Joseph Perez, Rafael Nieves, Ramon Avalos, Steven Spillman, and Topui Fonua, collectively, as the "City Defendants." *See* Dkt. No. 118 ¶¶ 19-24.

2

## II. LEGAL STANDARD

The work product doctrine, codified in Rule 26(b)(3) of the Federal Rules of Civil Procedure, protects from discovery documents and tangible things prepared by a party or his representative in anticipation of litigation or for trial. Fed. R. Civ. P. 26(b)(3); *United States v. Sanmina Corp.*, 968 F.3d 1107, 1119 (9th Cir. 2020) (citation omitted).[3] "At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 237–38 (1975). The doctrine protects both "material prepared by agents for the attorney as well as those prepared by the attorney himself," *id.* at 238–39, and its primary purpose is to "prevent exploitation of a party's efforts in preparing for litigation," *Admiral Ins. Co. v. U.S. Dist. Ct.*, 881 F.2d 1486, 1494 (9th Cir. 1989). Typically, work product protection extends to interview notes, memoranda, summaries, and analyses, as well as to verbatim witness statements. *See Hickman v. Taylor*, 329 U.S. 495, 511 (1947); *Hatamanian v. Advanced Micro Devices, Inc.*, No. 14-cv-00226-YGR(JSC), 2016 WL 2606830 at *3 (N.D. Cal. May 6, 2016).

The work product protection is not absolute and may be waived. *Nobles*, 422 U.S. at 239. A voluntary disclosure of work product waives the protection where such disclosure is made to an adversary in litigation or where the disclosure is made in a manner that substantially increases the opportunities for potential adversaries to obtain the work product. *Sanmina*, 968 F.3d at 1121 (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 2024 (3d ed. 2020)). Work product protection may also be waived by putting the protected work product at issue, such as by asserting claims that the opposing party cannot adequately dispute unless it has access to that protected work product. *See Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003); *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162-63 (9th Cir. 1992).

Even if the protection is not waived, work product may be discoverable if the materials meet the requirements of Rule 26(b)(1) and if the party seeking production shows a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their

---

[3] The parties appear to agree that federal law governs the application of the work product doctrine here, as all parties cite only to federal law. *See* Dkt. No. 99 at 2–9; Dkt. No. 100 at 2; *Kerr v. U.S. Dist. Ct. for N. Dist. of Cal.*, 511 F.2d 192, 197 (9th Cir. 1975).

substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A).  Upon such a showing, a court must nevertheless "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation," Fed. R. Civ. P. 26(b)(3)(B).

## III.  DISCUSSION

These discovery disputes require resolution of three issues.  First, the Court considers whether Mr. Rubalcava waived work product protection when his former counsel disclosed in her habeas declaration information about the contents of statements made by material witnesses interviewed during counsel's investigation, and if so, the appropriate scope of the waiver.  Second, the Court considers whether Mr. Rubalcava waived work product protection by describing information learned from material witnesses in his complaint and/or by identifying material witnesses and the subject matter of their respective testimony in his initial disclosures, and if so, the appropriate scope of the waiver.  Third, the Court consider whether the County Defendants and the City Defendants have shown a substantial need for any of the disputed work product under Rule 26(b)(3).

### A.  Kaneb Declaration

On October 15, 2018, Ms. Kaneb, Mr. Rubalcava's habeas counsel, signed a declaration under penalty of perjury.  Dkt. No. 100, Attach. 1 at 17.  According to the declaration, Ms. Kaneb's testimony is based on her "personal knowledge, personal review of files and documents related to this case, and discussions" with her client, two deputy district attorneys, an investigator, and three witnesses.  *Id.* ¶ 4.  As relevant to the parties' discovery disputes, the declaration includes numerous statements describing what certain witnesses said to Ms. Kaneb and her investigators during interviews she and her team conducted in 2015 and 2016 in support of Mr. Rubalcava's habeas petition.  The following excerpt from the declaration is representative:

> 19.  Ms. McEwen [Ms. Kaneb's investigator] interviewed David Gonzalez a few times, including August 10, 2016, October 4, and December 12, 2016.  Each time, Mr. Gonzalez was adamant that Mr. Rubalcava is not the shooter.  Mr. Gonzalez explained that upon seeing Mr. Rubalcava in person, he realized the shooter was shorter and stockier than Mr. Rubalcava.  He also mentioned repeatedly that Mr. Rodriguez had received money and/or a house for this case.

4

> During the first interview on August 10, Mr. Gonzalez also explained that he believed Mr. Rubalcava had gotten mixed up in all of this because Daniel Cercerez thought he recognized Mr. Rubalcava's truck two days after the shooting.

*Id.* ¶ 19.

The parties do not dispute that Ms. Kaneb's declaration discloses the contents of what the witnesses said to her and her team during interviews they conducted in support of the habeas petition on Mr. Rubalcava's behalf. *See* Dkt. No. 100 at 2, 5. Similarly, the parties do not dispute that Ms. Kaneb's declaration itself is unprotected—i.e., no party asserts that the contents of the declaration are confidential or that they have or retain any protection as attorney work product. Mr. Rubalcava publicly filed the declaration in state court, with no expectation of confidentiality, and relied on the declaration in an adversary proceeding challenging his conviction. The parties have advised the Court that defendants expect to take Ms. Kaneb's deposition, and it seems beyond dispute that Ms. Kaneb properly may be examined in deposition regarding the matters disclosed in her declaration, subject to the usual requirements that the deposition testimony must be relevant and proportional to the needs of the case.

As presented to the Court, the parties' discovery disputes concern the production of documents in Mr. Rubalcava's control. The parties do not dispute that Ms. Kaneb's declaration does not refer to or expressly rely on any documents that might be considered work product, such as attorney notes and memoranda, witness summaries, or emails and other communications between or among Ms. Kaneb, her team, and/or the witnesses. These circumstances distinguish this case from the two cases on which defendants principally rely where the work product documents at issue were disclosed and/or relied upon. In *U.S. v. Nobles*, 422 U.S. 225 (1975), defense counsel used a portion of his investigator's report during cross examination of a trial witness to refresh the witness's recollection of prior statements made to the investigator and subsequently called the investigator to testify regarding the prior statements to impeach the witness's testimony. 422 U.S. at 227-29. The Supreme Court found that the defense had made "testimonial use" of the investigator's report and therefore waived work product protection as to that document. *Id.* at 239-40 & n.14. Likewise, in *United States v. Sanmina Corp.*, 968 F.3d 1107 (9th Cir. 2020), Sanmina disclosed to the IRS a valuation report that cited and relied upon two

5

memoranda authored by Sanmina's in-house counsel. 968 F.3d at 1123-24. The Ninth Circuit held that Sanmina had "implicitly waived protection over any factual or non-opinion work product in [the memoranda] that serve as foundational material for [the valuation report]." *Id.* at 1125.

The question here is whether Ms. Kaneb's declaration testimony disclosing the contents (or partial contents) of the witness interviews she and her team conducted waives work product protection for documents relating to these same witness interviews. The declaration was signed and filed in October 2018 and refers to statements made by witnesses two to three years before the date of the declaration. While it is not clear from what sources Ms. Kaneb prepared the portions of her declaration disclosing the witnesses' statements, it is reasonable to infer that she relied on some contemporaneous record of what each witness said during his or her interview. The highlighted privilege log provided by Mr. Rubalcava reflects that the documents at issue include Ms. Kaneb's handwritten notes, interview notes, investigation memoranda, email correspondence between attorneys within NCIP, notes logging activity in this case, transcriptions of audio recordings received from the District Attorney's office, and notes summarizing documents and audio/visual recordings received from the District Attorney's office. Dkt. No. 111-1. The Court understands that Mr. Rubalcava claims work product protection with respect to all such materials.

In these circumstances, the Court finds that Mr. Rubalcava waived work product protection regarding the contents of the witness statements described in Ms. Kaneb's declaration. As in *Nobles*, Mr. Rubalcava has made testimonial use of the contents of the witnesses' statements. That is, by electing to present his attorney as a witness, Mr. Rubalcava waived work product protection with respect to the contents of the statements Ms. Kaneb and her team obtained and then disclosed in her declaration. *See Nobles*, 422 U.S. at 239-40 ("Respondent, by electing to present the investigator as a witness, waived the privilege with respect to matters covered in his testimony. Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials that he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination."). Mr. Rubalcava could have presented the witnesses' own testimony or perhaps other evidence to support his habeas petition, but he chose to

6

have his attorney testify instead. As in *Sanmina*, this conduct is inconsistent with Mr. Rubalcava's purported objective of protecting the contents of his attorney's investigative efforts from disclosure. *See Sanmina*, 968 F.3d at 1124 ("Presumably, Sanmina could have chosen to substantiate the deduction with other documents that did not make reference to the [memoranda] but did not. Such conduct seems inconsistent with Sanmina's purported goal of keeping the memoranda secret from the IRS."). By contrast, in *Upjohn Co. v. U.S.*, 449 U.S. 383 (1981), one of the cases on which Mr. Rubalcava relies, neither the company nor its in-house counsel disclosed the contents of the interviews and questionnaire responses counsel had obtained during the company's internal investigation, and therefore counsel's work product could not be discovered absent a sufficient showing of need. *See Upjohn*, 449 U.S. at 399-401. Similarly, in *Hatamian*, plaintiffs in a securities fraud class action described the nature of their investigatory interviews in their opposition to a motion to strike their complaint but did not disclose the contents of any witness statements beyond what they were already required by law to include in the complaint. *See Hatamian*, No. 14-cv-00226-YGR(JSC), 2016 WL 2606830, at *3 (N.D. Cal. May 6, 2016). The district court concluded that, in so doing, plaintiffs had not waived any work product protections. *Id.*

Invoking considerations of fairness, Mr. Rubalcava argues that Ms. Kaneb's declaration contains inadmissible hearsay and therefore cannot be used as a sword or a shield in this case. Dkt. No. 100 at 6. That may be so, but the evidentiary significance of the declaration in this case is irrelevant to the question of whether by filing it in support of his habeas petition in the state court proceeding, Mr. Rubalcava disclosed work product to an adversary in litigation. It seems clear that he did. The Court is mindful of its obligation to consider whether and to what extent fairness mandates the disclosure of records reflecting the contents of these witness interviews to defendants. *See Sanmina*, 968 F.3d at 1124. After all, as Mr. Rubalcava argues, defendants are free to interview or depose all of the witnesses whose statements are described in Ms. Kaneb's declaration, and defendants should not be able to simply piggyback on the earlier efforts of Mr. Rubalcava's counsel. Dkt. No. 100 at 6. However, Mr. Rubalcava did not disclose merely that his attorney had done an investigation that included witness interviews; he disclosed the contents (or

7

partial contents) of those interviews. The Court expects that the consistency or lack thereof of the witnesses' statements during the original criminal investigation, their testimony at trial, and their subsequent statements about the case over time may be relevant, and given Ms. Kaneb's prior testimony, these witnesses' complete statements to her and her team about these matters are fairly discoverable.

Mr. Rubalcava also relies on *Bittaker v. Woodford*, 331 F.3d 715 (9th Cir. 2003), to argue that it would be unfair to find a waiver of work product in these circumstances. Dkt. No. 100 at 6-7. The Court disagrees. In *Bittaker*, the Ninth Circuit held that the scope of a habeas petitioner's waiver of attorney-client privilege, which arose from the petitioner putting his trial counsel's effectiveness at issue in a habeas proceeding, extended only to litigation of the ineffective assistance of counsel claim in federal court, and so the "materials therefore remain privileged for all other purposes." 331 F.3d at 717 n.2, 721–24. *Bittaker*, however, is distinguishable. In *Bittaker*, the Ninth Circuit analyzed attorney-client privilege in the context of a purported waiver by claim assertion, *see id.* at 719 n.4, 720–25, which it distinguished from cases involving waivers by disclosure:

> These cases [involving waivers by disclosure] hold that, once documents have been turned over to another party voluntarily, the privilege is gone, and the litigant may not thereafter reassert it to block discovery of the information and related communications by his adversaries. [ ] Because these express waiver cases do not involve the court-ordered disclosure of privileged information after "the client [has] assert[ed] a claim or defense that place[d] at issue the nature of the privileged material," [ ], we do not find them particularly useful in ascertaining the scope of Bittaker's waiver of his attorney-client privilege under the fairness principle.

*Id.* at 720 (citations omitted).[4] Further, in *Bittaker*, the Ninth Circuit was motivated by a concern that if a habeas petitioner's waiver of privilege extended beyond the habeas proceeding to all subsequent proceedings, including the petitioner's possible retrial, such a waiver could seriously undermine the interests the attorney-client privilege is intended to serve and would require a petitioner to choose between asserting an ineffective assistance of counsel claim and risking the

---

[4] Although *Bittaker* concerns the scope of a waiver of attorney-client privilege, the Ninth Circuit extended its analysis to waivers of work product protection. 331 F.3d at 722 n.6.

8

prosecution's use of his communications with his first lawyer during a retrial, or retaining the privilege and given up his ineffective assistance claim. *See id.* at 722-23. These fairness concerns are not present here. The purported waiver does not arise from Mr. Rubalcava's disclosure of privileged communications to support a claim of ineffective assistance of counsel, and he is not subject to retrial, having been found factually innocent. More importantly, Mr. Rubalcava identifies no considerations in the context of his own habeas petition suggesting he was presented with a dilemma analogous to the one facing the habeas petitioner in *Bittaker* when he chose to have Ms. Kaneb testify by submitting a declaration disclosing what certain witnesses had said to her and her team.

Having concluded that Mr. Rubalcava waived work product protection as a result of the testimonial disclosures in Ms. Kaneb's declaration, the Court now considers the scope of the waiver. Nothing in Ms. Kaneb's declaration suggest that Mr. Rubalcava or his counsel have disclosed any opinion work product—i.e., work product that reveals counsel's "mental impressions, conclusions, opinions, or legal theories." *See* Fed. R. Civ. P. 26(b)(3)(B); *Hickman*, 329 U.S. at 508. The disclosure is limited to factual, or non-opinion, work product commensurate with the disclosure made in Ms. Kaneb's declaration. *See Sanmina*, 968 F.3d at 1125. Mr. Rubalcava says that he has already produced "witness declarations, all correspondence and files received from the D.A.'s Office, and witness payment records." Dkt. 100 at 5.[5] In addition, he must also produce any recordings, transcripts, or verbatim witness statements[6] documenting what the following witnesses said during the following interviews:

| Witness | Interview date | Declaration cite |
|---|---|---|
| Nicholas Luke Faria | On or about July 28, 2015 | Kaneb Decl. ¶ 11 |

---

[5] It is not clear whether the witness declarations that have been produced include declarations for each of the witnesses whose statements are disclosed in Ms. Kaneb's declaration and whether those declarations contain the same or different content than what is disclosed in Ms. Kaneb's declaration.

[6] Mr. Rubalcava need not produce both a recording and a transcript of the same recording; he may elect to produce only the recording.

9

| Alex Borrego | February 5, 2016 | Kaneb Decl. ¶ 12 |
|---|---|---|
| Anne Fields | March 15, 2016 | Kaneb Decl. ¶ 13 |
| Daniel Cerecerez | March 22, 2016 | Kaneb Decl. ¶ 14 |
| David Gonzalez | August 10, 2016<br>October 4, 2016<br>December 12, 2016 | Kaneb Decl. ¶¶ 15, 19 |
| David Holmes | November 28, 2016 | Kaneb Decl. ¶¶ 16, 17 |
| Angel Gonzalez | December 5, 2016 | Kaneb Decl. ¶ 18 |
| Christine Gaye | December 16, 2016 | Kaneb Decl. ¶ 20 |

To the extent Mr. Rubalcava claims work product protection for notes and memoranda (in whatever form) in which factual work product documenting the witnesses' statements is intertwined with opinion work product, only those portions of the documents comprising factual work product must be produced to defendants; the portions containing opinion work product may be redacted. Further, if Mr. Rubalcava produces a complete audio recording or transcript of the interview, he need not also produce notes and memoranda documenting the same interview. The Court will not require Mr. Rubalcava to produce emails and other communications between or among Ms. Kaneb, her team, and/or the witnesses, except to the extent they memorialize the contents of the above interviews and no other source documents that content; if emails and other communications are produced, any opinion work product may be redacted.

**B.     Mr. Rubalcava's Complaint and Initial Disclosures**

On June 25, 2020, Mr. Rubalcava filed his initial complaint in this action. Dkt. No. 1. The complaint's allegations refer to many witnesses. *Id.* Mr. Rubalcava later served his Rule 26 initial disclosures on the City Defendants. Dkt. No. 99, Ex. B. These initial disclosures identify witnesses whom Mr. Rubalcava believes are likely to have discoverable information. *Id.* at 2–9. The City Defendants contend that Mr. Rubalcava's disclosures in the complaint and in his initial disclosures regarding these witnesses waives work product protection for any factual investigative material in his possession concerning the witnesses. Dkt. No. 99 at 2. Mr. Rubalcava responds that there has been no such waiver, observing that merely filing a complaint and identifying

10

witnesses as required by the Federal Rules of Civil Procedure is not the kind of disclosure that can support a waiver of work product protection for the documents on which counsel relied in preparing those materials. *Id.* at 5–9.

The Court agrees with Mr. Rubalcava. The City Defendants have not shown that including factual allegations required to be made in a complaint and identifying witnesses in mandatory initial disclosures waives work production protection. *See, e.g., Hatamian*, 2016 WL 2606830, at *3–5 (finding no work product waiver, and observing "[t]o find a waiver under the circumstances here would mean that any time a defendant challenges the accuracy of a complaint's allegations, and a plaintiff responds to that challenge by defending the good faith basis for making the claims, the plaintiff will be deemed to have waived work product."); *In re MTI Tech. Corp. Sec. Litig. II*, No. SACV 00-0745 DOC, 2002 WL 32344347, at *5 (C.D. Cal. Jun. 13, 2002) (finding no work product waiver where plaintiffs referred to defendants' former employees' identities in a complaint, because "[p]laintiffs simply referenced former employees to provide a credible basis and specific context for allegations that will be proved with admissible evidence at a later date."); *United States v. Dist. Council of New York City & Vicinity of United Bhd. of Carpenters & Joiners of Am.*, No. 90 CIV 5722 (CSH), 1992 WL 208284, at *4, *10 (S.D.N.Y. Aug. 18, 1992) (finding no work product waiver for communications government agent had with individuals referenced in government's complaint, where government agent would not testify as a fact witness regarding her interviews of those individuals). Pleadings and mandatory initial disclosures are not testimonial and serve functions—i.e., notice and discovery—that are very different from the function served by testimony. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 310–311 (2009) (documents were testimonial where they were plainly "declaration[s] of facts written down and sworn to by the declarant before an officer authorized to administer oath," and "functionally identical to live, in-court testimony, doing 'precisely what a witness does on direct examination.'"). Mr. Rubalcava says that he has already produced the only work product implicated by the *Brady* claims asserted in his complaint—i.e., what Mr. Rubalcava's criminal trial counsel knew or should have known about exculpatory evidence. *See* Dkt. No. 99 at 8 n.3; *Tennison*, 226 F.R.D. at 622. The City Defendants have not shown that any other work product has been put at issue by of Mr.

11

Rubalcava's other claims.[7]

The City Defendants rely heavily on *Nobles*, where a criminal defendant presented his investigator as a witness and so waived work product protection over the subject matter of the investigator's testimony. *Nobles,* 422 U.S. at 236, 239. But, as Mr. Rubalcava correctly notes, identifying potential witnesses in initial disclosures is not the same as offering testimony from these witnesses, Dkt. No. 99 at 8, and the City Defendants have offered no persuasive support for the proposition that identifying potential witnesses in initial disclosures is akin to offering witness testimony.

Accordingly, the Court denies the City Defendants' request for an order requiring Mr. Rubalcava to produce all factual investigative material concerning the material witnesses referenced in the complaint and identified in his initial disclosures.

### C. Substantial Need

The City Defendants argue that even if Mr. Rubalcava did not waive work product protection for some or all of the materials the City Defendants demand, Defendants have substantial need for work product materials relating to material witnesses because the information "sought here is from many years ago and spans decades." Dkt. No. 99 at 4–5. This argument is unpersuasive.

Rule 26(b)(3)(A)(ii) requires a party to demonstrate that it "has substantial need for the materials to prepare its case and cannot, *without undue hardship*, obtain their substantial equivalent by other means." As Mr. Rubalcava observes, the work product at issue was developed during his post-conviction habeas investigation five years ago, well after his wrongful conviction in 2003. None of the disputed work product extends back to the time of the crime in 2002 or Mr. Rubalcava's trial in 2003. Dkt. No. 99 at 9. More importantly, the City Defendants have not attempted to interview any of the witnesses and thus have no basis to contend that the witnesses'

---

[7] The City Defendants also point to *United States v. Meyer*, 398 F.2d 66 (9th Cir. 1968), but the facts there are dissimilar. In that condemnation case, the court ruled that pretrial disclosure of potential government expert witnesses' appraisals was necessary for the parties to fairly evaluate their respective claims, and that such information was not available from other sources. *Id.* at 69–72.

memories have faded during the past five years, nor have they made any other showing of undue hardship.

Finally, there is no "imbalance" that requires correcting simply because Mr. Rubalcava's former counsel has shared with his current counsel privileged and work product materials that former counsel developed, and the Court rejects the City Defendants' argument on this point. *See* Dkt. No. 99 at 2; *see also Upjohn*, 449 U.S. at 396 ("While it would probably be more convenient for the Government to secure the results of petitioner's internal investigation by simply subpoenaing the questionnaires and notes taken by petitioner's attorneys, such considerations of convenience do not overcome the policies served by the attorney-client privilege.").

Accordingly, the Court denies the City Defendants' request for production of work product materials on the basis of "substantial need."

## IV.  CONCLUSION

The Court concludes that Mr. Rubalcava has waived work product protection with respect to the contents of the witness statements disclosed in Ms. Kaneb's declaration, and therefore Mr. Rubalcava must produce the documents specifically described above.  To the extent the parties dispute what Mr. Rubalcava must produce in order to comply with this order, they should submit a joint discovery dispute letter regarding any such disputes.  That submission may be accompanied by an *in camera* submission of proposed redactions of opinion work product, if appropriate.

**IT IS SO ORDERED.**

Dated: February 16, 2022

*Virginia K. DeMarchi*
VIRGINIA K. DEMARCHI
United States Magistrate Judge