UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIONEL RUBALCAVA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN JOSE, et al.,<br><br>Defendants. | Case No. 20-cv-04191-BLF   (VKD)<br><br>**ORDER RE FEBRUARY 2, 2022 DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 128 |

Plaintiff Lionel Rubalcava and non-party California Department of Justice ("DOJ") ask the Court to resolve their dispute concerning Mr. Rublacava's subpoena to DOJ. Dkt. No. 128. The Court held a hearing on the matter on March 1, 2022. Dkt. No. 131.

The Court will require DOJ to produce responsive records corresponding to categories 1 and 4 of DOJ's privilege log, as limited below, but will not require DOJ to produce responsive records corresponding to category 3 of the log.

**I.   BACKGROUND**

In this action, Mr. Rubalcava asserts claims for violations of his federal constitutional rights and violations of state law arising from his conviction in 2003 for the attempted murder of Raymond Rodriguez. Dkt. No. 118. Mr. Rubalcava served more than seventeen years in prison before the Santa Clara County Superior Court vacated his conviction. Dkt. No. 118 ¶¶ 1, 143, 175, 176. He claims that San Jose police officers and Santa Clara County investigators fabricated evidence and committed other misconduct that led to his wrongful conviction. *See, e.g., id.* ¶¶ 183-189, 194-195, 199-200.

Mr. Rubalcava served a subpoena on DOJ seeking production of documents concerning the

criminal histories of ten people who are witnesses to events relating to his wrongful conviction. Dkt. No. 128; Dkt. No. 128-1.  DOJ objects to producing three categories of documents responsive to the subpoena:

1. arrest records for seven individuals;
2. information maintained in an NCIC/FBI database for three individuals; and
3. an outstanding arrest warrant from 2017 for one individual.

Dkt. No. 128 at 2, 8; Dkt. No. 128-2 at 2 (entries 1, 3, and 4).  Defendants do not object to Mr. Rubalcava's subpoena to DOJ.

## II.     DISCUSSION

This dispute requires the Court to address three questions.  First, are the documents Mr. Rubalcava seeks relevant to any claim or defense in this case?  Second, is the information maintained in the NCIC/FBI database within the possession, custody, or control of DOJ and otherwise subject to compulsory production?  Third, does the official information privilege protect any of the responsive documents from discovery, and if so, should the Court nevertheless permit discovery of responsive information upon weighing the applicable interests?

### A.     Relevance

Mr. Rubalcava explains that all ten witnesses were questioned by defendants as part of their investigation of Mr. Rodriguez's shooting, many of them were "actively involved in the local gang scene at the time the shooting took place," and many of them testified at Mr. Rubalcava's trial.  Dkt. No. 128 at 3–4.  He argues that the disputed documents are relevant to the following matters: (1) "how Defendants pressured and coerced witnesses to provide false statements and testimony inculpating" Mr. Rubalcava; (2) "what the true circumstances of the Rodriguez shooting were"; and (3) "evaluating witnesses' credibility then and now."  Dkt. No. 128 at 3.  DOJ argues that the disputed records are not relevant because they "do not contain any information of gang activity during the Rodriguez shooting, the investigation, or the related trial."  *Id.* at 11.  In addition, DOJ points out that the single outstanding arrest warrant is from 2017—14 years after the shooting.  *Id.*

Mr. Rodriguez was shot on April 5, 2002, and Mr. Rubalcava was tried and convicted of

his attempted murder in November 2003. Dkt. No. 118 ¶¶ 28, 143. In 2018 the Northern California Innocence Project began investigating the circumstances of the shooting, the criminal investigation, and Mr. Rubalcava's prosecution. *Id.* ¶¶ 11, 170. The Santa Clara County District Attorney also re-investigated the matter, and ultimately joined in Mr. Rubalcava's petition to vacate his conviction. *Id.* ¶ 11. The state court granted his petition on April 24, 2019, and on November 18, 2019 found Mr. Rubalcava factually innocent. *Id.* ¶¶ 170-178.

Mr. Rubalcava has already obtained evidence that he says shows defendants arrested one of the witnesses, Mr. Gonzalez, in an attempt to coerce false testimony from him. Dkt. No. 128 at 4. Mr. Rubalcava seeks other witnesses' criminal history records so that he may ascertain whether defendants also may have coerced other witnesses' testimony and/or whether these witnesses had gang ties and were involved in other criminal activity at that time of the shooting and trial. *Id.* At the hearing, DOJ represented to the Court that it has records of arrest and/or conviction for seven individuals within the scope of Mr. Rubalcava's subpoena, spanning the years 1998 through 2021, depending on the individual. Dkt. No. 131. DOJ also represented that it has access to NCIC/FBI databases that include other records, not otherwise available to the State of California, concerning criminal activity relating to three individuals within the scope of Mr. Rubalcava's subpoena.[1] *Id.* Finally, DOJ indicated that it has already produced responsive records that concern any of the ten witnesses' gang-related activities. *Id.*

The Court agrees with Mr. Rubalcava that records of witnesses' arrests and convictions during the period of time through Mr. Rubalcava's trial and conviction are relevant to the question of whether they were subjected to pressure or coercion to fabricate or change their testimony, as Mr. Rubalcava alleges. However, the Court is not persuaded that records of witnesses' arrests *after* Mr. Rubalcava's trial and conviction are relevant to any issue in the case. While evidence of a felony conviction within ten years may be relevant to a witness's credibility, *see* Fed. R. Evid. 609, evidence of arrests is not.

Mr. Rubalcava says that during his state court habeas proceedings and now in this federal

---

[1] The Court understands that the NCIC/FBI databases may include records of investigations, arrests, and/or convictions for criminal activity occurring in non-California jurisdictions.

action witnesses may have been or will be pressured or coerced to change their testimony to favor defendants and/or undermine Mr. Rubalcava's claims. *See* Dkt. No. 128 at 4–5; Dkt. No. 131. For this reason, Mr. Rubalcava argues that all criminal history records should be produced. Dkt. No. 128 at 5. Mr. Rubalcava's argument on this point is not well-developed in the joint submission, and the cases on which he relies are not particularly helpful. *Whitely v. CDCR*, No. CV 18-1143, 2020 WL 8455139, at *2 (C.D. Cal. Sept. 25, 2020) contains virtually no discussion of the issue, and *Matter of Francis*, No. 16-cv-1873, 2017 WL 5495108, at *4 (S.D. Cal. Nov. 16, 2017) principally discusses relevance with respect to defendant's knowledge, and not the credibility or coercion of witnesses. At the hearing, Mr. Rubalcava's counsel acknowledged they do not presently have information suggesting that anyone has pressured or coerced any of the ten witnesses to change or withhold testimony by threatening them directly or indirectly with arrest or prosecution since Mr. Rubalcava's trial and conviction. Dkt. No. 131. However, they say these witnesses are particularly vulnerable to such pressure and coercion. *Id.*

While the Court is sympathetic to Mr. Rubalcava's concerns, those concerns appear to be purely hypothetical as this time and do not support his demand for the production of all criminal history records for all witnesses. Rather, the Court concludes that the following records are relevant: (1) records of arrest through November 2003 (the date of Mr. Rubalcava's conviction) and (2) records of conviction[2] through the present.

### B.  NCIC/FBI Database Information

DOJ argues that a federal statute limits its access to information in database maintained by the National Crime Information Center ("NCIC") and the Federal Bureau of Investigation ("FBI"), and that it is not authorized to access the database for purposes of disclosing information to Mr. Rubalcava for use in this action. Dkt. No. 128 at 12; Dkt. No. 128-4 ¶¶ 3, 7. Mr. Rubalcava does not address this argument in the joint submission, but during the hearing, he argued that because DOJ has access to the records maintained in the NCIC/FBI database, the Court may compel their

---

[2] DOJ advises that it may be difficult to easily distinguish felony and misdemeanor convictions, so the Court will require the production of records of all convictions.

4

1 production. Dkt. No. 131.

2 As explained in the Supreme Court's decision in *U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989), a federal statutory framework governs the collection, classification, preservation, and exchange of criminal identification and history records. *See Reporters Committee*, 489 U.S. at 751-53. DOJ is not authorized to share the information it has access to in the NCIC/FBI database with private parties, and its access to the database is subject to cancellation if it disseminates the information to unauthorized parties. *See* Dkt. No. 128 at 12; Dkt. No. 128-3 ¶ 8; *see also* 28 U.S.C. §§ 534(a), (b).

In these circumstances, it is not clear whether the Court has authority to order production for use contrary to the federal statutes that govern access to the NCIC/FBI database—i.e., for use by a private party in civil litigation. As Mr. Rubalcava has not made any showing that the Court does have such authority and that these records are, in fact, within DOJ's possession, custody, or control, the Court concludes that Mr. Rubalcava has not adequately supported his demand for responsive records accessible only via the NCIC/FBI database.

### C. Official Information Privilege and Privacy Interests

DOJ argues that an "official information" privilege protects the disputed documents from disclosure.[3] "Federal common law recognizes a qualified privilege for official information." *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990). The privilege generally protects information collected by law enforcement agencies. *See Kelly v. City of San Jose*, 114 F.R.D. 653, 660 (N.D. Cal. 1987). In determining whether information potentially within the scope of the privilege is nevertheless discoverable, a court must weigh the potential benefits of disclosure against the potential disadvantages. *Sanchez*, 936 F.2d at 1033-34; *Kelly*, 114 F.R.D. at 660-63.

DOJ argues that all of the criminal history records Mr. Rubalcava seeks are "official

---

[3] At the hearing, DOJ conceded that federal law, not state law, governs questions of privilege in this action. Dkt. No. 131. DOJ also conceded that the federal law enforcement privilege does not apply to any matter in dispute. *Id.*

5

information."[4] It relies on the declaration of Kirk Beardwood, Assistant Director/IT Manager II of the Application Development Bureau, a department within the California DOJ, in support of DOJ's claim of privilege. Dkt. No. 128-4. According to Mr. Beardwood, disclosing the responsive criminal history records to Mr. Rubalcava and/or his counsel "will harm [the] governmental interest of providing accurate information," because without fingerprint information DOJ cannot be confident that the records matching the names and dates of birth of the individual witnesses are, in fact, their records. *Id.* ¶ 7. DOJ argues that the protections afforded by the protective order are insufficient to prevent misuse of this confidential information. *Id.* ¶ 8. At the hearing, DOJ clarified that this misuse includes sharing with a witness in deposition the confidential criminal history record of someone with the same name and birthdate as the witness, but who is not in fact the same individual. Dkt. No. 131.

DOJ's interests accord with important privacy interests that the Supreme Court recognized in *Reporters Committee*. "Although much rap-sheet information is a matter of public record, the availability and dissemination of the actual rap sheet to the public is limited. Arrests, indictments, convictions, and sentences are public events that are usually documented in court records." 489 U.S. at 753. The Court recognized a distinction between "scattered disclosure of the bits of information contained in a rap sheet and revelation of the rap sheet as a whole." *Id.* at 764. Examining the statutes and regulations applicable to the FBI's aggregation of criminal history records, the Court observed: "[T]hese statutes and regulations, taken as a whole, evidence a congressional intent to protect the privacy of rap-sheet subjects, and concomitant recognition of the power of compilations to affect personal privacy that outstrips the combined power of the bits of information contained within." *Id.* at 765.

DOJ has made an adequate showing that the information at issue is potentially within the scope of the "official information" privilege. The Court has already concluded that records of arrest through November 2003 (the date of Mr. Rubalcava's conviction) and records of conviction

---

[4] DOJ defines the "official information" at issue with reference to Cal. Evid. Code § 1040(a) ("information acquired by a public employee in the course of his or her duty and not open, or officially disclosed, to the public"). Dkt. No. 128 at 9. As noted above, the state law evidentiary privilege does not apply in this case.

through the present are relevant to Mr. Rubalcava's claims and defendants' defenses. Therefore, the Court must balance Mr. Rubalcava's interest in obtaining this information against DOJ's interest in ensuring that an individual's criminal history records are not inadvertently exposed to others, as well as the government's interest in protecting the privacy of this information.

As an initial matter, DOJ's concerns about the confidentiality of the records at issue can be adequately addressed by designating the records under the protective order (Dkt. No. 63) so that access is limited to outside counsel only. However, Mr. Rubalcava not only wishes to learn the contents of the criminal history records for each individual witness, but he also wishes to use these records in examining the witness during deposition. If he is permitted to use the records in this way, there remains a risk that a witness would be shown records in a deposition that were not his or hers. Given the nature of the records at issue (i.e., arrests and convictions) and the context in which this information is likely to be used with a witness (i.e., a private deposition), the Court concludes that the risk of harm from inadvertent disclosure is likely to be very limited. However, to address this risk, the Court will require Mr. Rubalcava's counsel to diligently examine any responsive records for indicia that they are indeed the records pertaining to a particular witness before showing such records to the witness.

### III. CONCLUSION

For the reasons explained above, the Court requires DOJ to produce responsive records corresponding to document categories 1 and 4 in DOJ's privilege log (Dkt. No. 128-2 at 2), so long as those records are limited to (1) records of arrest through November 2003 (the date of Mr. Rubalcava's conviction) and (2) records of conviction through the present. DOJ may designate these records as accessible on an outside counsel's eyes only basis. However, if Mr. Rubalcava (or any other party) wishes to show a record to a witness in deposition, the Court requires counsel to first diligently examine the record to ensure that it corresponds to the information counsel already has about the witness to minimize the risk that the record refers to a different individual. Any questions about whether the record does not match the witness should be resolved, by the Court if necessary, before the record is used in deposition.

The Court will not require DOJ to produce responsive records corresponding to document

7

1  category 3 (information from the NCIC/FBI database).

2  **IT IS SO ORDERED.**

3  Dated: May 18, 2022

_Virginia K. DeMarchi_
VIRGINIA K. DEMARCHI
United States Magistrate Judge