UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| LIONEL RUBALCAVA,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>CITY OF SAN JOSE, et al.,<br><br>　　　　　Defendants. | Case No. 20-cv-04191-BLF   (VKD)<br><br>**ORDER RE MARCH 20, 2023 DISCOVERY DISPUTE RE PLAINTIFF'S DEPOSITION**<br><br>Re: Dkt. No. 174 |

Plaintiff Lionel Rubalcava and defendants City of San Jose, Joseph Perez, Topui Fonua, Steven Spillman, Rafael Nieves, and Ramon Avalos (collectively, "Defendants") ask the Court to resolve their dispute concerning Defendants' deposition of Mr. Rubalcava. Dkt. No. 174. The Court finds this matter suitable for resolution without oral argument. Civil L.R. 7-1(b).

For the reasons explained below, the Court concludes that Defendants are entitled to take a further, limited deposition of Mr. Rubalcava.

**I.　BACKGROUND**

In this action, Mr. Rubalcava asserts claims for violations of his federal constitutional rights and violations of state law arising from his wrongful conviction in 2003 for the attempted murder of Raymond Rodriguez. Dkt. No. 118.

During his deposition on February 8, 2023, Mr. Rubalcava's counsel instructed him not to answer certain questions about his criminal history, including questions about his juvenile criminal history and about arrests for conduct for which he was not charged. Dkt. No. 174 at 2. Defendants argue that they should be permitted to inquire about these subjects because they are relevant to Mr. Rubalcava's allegations that police officers fabricated evidence of his participation

in intra-gang violence and because they are relevant to his damages claims. *Id.* at 7-8. Mr. Rubalcava disagrees that such questioning is relevant to any claim or defense. *Id.* at 2-5.

In addition, Defendants say that because Mr. Rubalcava failed to timely disclose that he received mental health treatment after his release from prison and failed to timely produce his mental health treatment records, they had no opportunity to examine him about these matters in his deposition *Id.* at 9. Mr. Rubalcava says that he did not produce these records earlier because he had no affirmative duty to do so, and therefore, Defendant cannot demonstrate good cause for a further deposition on this ground. *Id.* at 5-6.

Finally, citing counsel's instructions not to answer, the belated production of mental health treatment records, as well as counsel's conduct during the deposition, Defendants ask for an order directing Mr. Rubalcava to submit to another five hours of deposition. *Id*. at 6-10. Mr. Rubalcava disagrees that a further deposition is warranted for any reason. *Id.* at 1-5.

## II.     DISCUSSION

### A.     Questioning re Criminal History

Defendants say that counsel improperly objected to deposition questions about Mr. Rubalcava's criminal history and his involvement in gang activities, and that counsel improperly instructed him not to answer specific questions. They argue that Mr. Rubalcava has put these matters directly at issue in his amended complaint. Mr. Rubalcava does not object to questioning about his adult criminal history or his personal knowledge of and experience with gangs, and he answered some questions about these matters during his deposition. However, Mr. Rubalcava objects to any questioning about his juvenile criminal history, misdemeanor convictions, or arrests for which he was not charged.

In his amended complaint, Mr. Rubalcava alleges that police officers fabricated the existence of a war among factions of the Norteño gang and that this misconduct was a critical factor in Mr. Rubalcava's wrongful conviction and lengthy prison sentence. Dkt. No. 118 ¶¶ 7-9, 116-119, 126-128, 138, 143-144, and Counts 1-4. While the thrust of the allegations is that police officers fabricated evidence of an intra-gang feud, Mr. Rubalcava also alleges that he was not involved in any gang-related activity at the time of Mr. Rodriguez's shooting. For example, the

amended complaint includes the following allegations:

> Recognizing that Rubalcava had no connection to the Sureños, Defendants fabricated false evidence that the victim was shot as a part of an internecine Norteño feud. In fact, there was no such feud; Defendants simply made it up. As a teenager, Rubalcava, like hundreds of other kids in his community, had joined a local Norteño gang. But he had since grown up and had long been inactive—at the time of the shooting, he worked for his father's family business and was raising a young son. By fabricating evidence that Rubalcava shot Rodriguez as part of a fictitious inter-Norteño gang feud, Defendants enabled the prosecution to paint a false portrait of Rubalcava as a ruthless, violent gangbanger. Defendants thereby turned evidence of Rubalcava's innocence—that the shooter, unlike him, was a Sureño—into false evidence of guilt.

Dkt. No. 118 ¶ 7. In addition, Mr. Rubalcava claims very substantial and wide-ranging injuries as a result of his wrongful conviction and long incarceration. The amended complaint includes the following allegations:

> Lionel Rubalcava spent more than 17 years incarcerated for a crime he did not commit. He must now attempt to make a life for himself without the benefit of those life experiences and resources that normally equip adults for that task.
>
> As a direct result of Defendants' intentional, bad faith, willful, wanton, reckless, or deliberately indifferent acts and omissions, Rubalcava sustained injuries and damages, which continue to date and will continue into the future, including: loss of freedom for more than 17 years; physical pain and suffering; severe mental anguish; emotional distress; loss of family relationships; severe psychological damage; loss of property; legal expenses; loss of income and career opportunities; humiliation, indignities, and embarrassment; degradation; permanent loss of natural psychological development; and restrictions on all forms of personal freedom including but not limited to diet, sleep, personal contact, educational opportunity, vocational opportunity, athletic opportunity, personal fulfillment, sexual activity, family relations, reading, television, movies, travel, enjoyment, and expression, for which he is entitled to monetary relief.

*Id.* ¶¶ 179-180.

The Court agrees with Defendants that Mr. Rubalcava has placed his prior criminal history and gang-related activities at issue for purposes of discovery. This is particularly true with respect to his allegations of injury and damages. Mr. Rubalcava claims that he has suffered, and will

3

1    continue to suffer, injuries affecting virtually all aspects of his life as result of Defendants'
2    misconduct. Defendants argue persuasively that Mr. Rubalcava's experiences and conduct
3    unrelated to his wrongful conviction and lengthy incarceration may have caused or contributed to
4    these injuries. *See* Dkt. No. 174 at 8. Such discovery is clearly relevant to Defendants' defense.
5    *See, e.g., Peraza v. Delameter,* 722 F.2d 1455, 1457 (9th Cir. 1984) (trial court did not abuse its
6    discretion by admitting evidence of plaintiff's "subsequent encounters" with the police and
7    "difficulties in school" on the question of damages); *Castillo v. City of Los Angeles*, No. 2:20-CV-
8    04257-JAK-JC, 2021 WL 8895084, at *5 (C.D. Cal. Dec. 13, 2021) (permitting discovery of
9    "certain prior arrests/convictions, interactions with/other alleged mistreatment by law enforcement
10   officers, and drug use" as relevant to "whether Plaintiff's asserted emotional distress damages
11   were all caused by Defendants' alleged actions or whether other events not attributable to
12   Defendants caused or contributed to causing such damages"); *Brooks v. Haggett*, No. C 07-2615
13   MEJ, 2010 WL 4226693, at *8 (N.D. Cal. Oct. 21, 2010) (denying motion in limine to exclude
14   plaintiff's "history of prior police encounters" where such evidence was relevant to damages).

15         The discovery Defendants seek is also relevant to the merits of Mr. Rubalcava's claim that
16   defendant police officers deliberately fabricated evidence of his role in gang-related violence and
17   criminal activity. Mr. Rubalcava acknowledges that he joined a local Norteño gang as a teenager,
18   but he alleges that "he had since grown up" and at the time of the shooting he "had long been
19   inactive" in a gang. Dkt. No. 118 ¶ 7. Questions about Mr. Rubalcava's adult criminal history
20   (but not his juvenile criminal history) and his adult gang involvement—encompassing the
21   approximately five years preceding his arrest for the shooting of Mr. Rodriguez—are relevant to
22   Mr. Rubalcava's allegations that he was falsely accused of gang participation.

23         Mr. Rubalcava acknowledges that he has already testified about his involvement with a
24   gang as a juvenile and as an adult, as well as other interactions with law enforcement that did not
25   result in a conviction. *See* Dkt. No. 174 at 3. Having permitted Mr. Rubalcava to answer these
26   questions in his deposition, it is not entirely clear why his counsel instructed him not to answer
27   others, and why he now seeks protection against any further questioning about his juvenile
28   criminal history, misdemeanor convictions, and uncharged arrests. While some of the evidence

4

1    Defendants seek may not be admissible on summary judgment or at trial, the Court is persuaded
2    that Mr. Rubalcava's experiences and conduct—including his experiences and conduct as a
3    juvenile—are potentially relevant to questions of injury and damages, and are therefore
4    discoverable.

5    In these circumstances, the Court denies Mr. Rubalcava's request for a protective order as
6    to these matters. Subject to the time limit described below, Defendants may inquire further about
7    Mr. Rubalcava's criminal history and gang-related activities, including his juvenile criminal
8    history, misdemeanor convictions, and arrests for uncharged conduct. The questioning should
9    focus on how Mr. Rubalcava's experiences and conduct may have impacted his mental health and
10   other interests for which he claims injury and damages and how his adult criminal history and
11   adult gang involvement, if any, bear on his allegations that Defendants fabricated evidence of his
12   participation in gang-related activity. Defendants should avoid questioning solely designed to
13   discover whether Mr. Rubalcava committed crimes for which he was never arrested or charged.

### B.     Questioning re Mental Health Treatment Records

Defendants contend that they did not have an adequate opportunity to question Mr. Rubalcava about the mental health treatment he has received since his release from custody because he did not timely disclose the names of his treatment providers or produce his treatment records. Dkt. No. 174 at 9. Mr. Rubalcava acknowledges that he did not produce this material, but argues that this is Defendants' fault because they never served a discovery request seeking the identity of his treatment providers or his treatment records. *Id.* at 5. In addition, Mr. Rubalcava points out that Defendants have already questioned him about this mental health treatment (albeit without any records). *Id.*

The parties debate whether Mr. Rubalcava was required to disclose the identities of his treatment providers and his treatment records to Defendants as part of his Rule 26(a) initial disclosures. Mr. Rubalcava says that he does not intend to call any treatment providers in support of his claims at trial, and so he was not required to disclose them in his initial disclosures. *Id.* Mr. Rubalcava does not say whether he intends to rely on his treatment records at trial. Defendants respond that Rule 26(a) requires Mr. Rubalcava to disclose "a computation of each category of

damages claimed" and to "make available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which each computation is based, including materials bearing on the nature and extent of injuries suffered." *Id.* at 9; Fed. R. Civ. P. 26(a)(1)(A)(iii). Defendants argue that even if the records were not in Mr. Rubalcava's possession initially, he had a duty to investigate and disclose their existence in his initial disclosures.

The Court need not resolve this debate. Mr. Rubalcava has now obtained and produced mental health treatment records to Defendants. These records are clearly relevant to his claim that he suffered injuries relating to his mental health as a result of Defendants' misconduct, whether he intends to use the records at trial or not. Defendants were prejudiced in their prior efforts to examine Mr. Rubalcava about his mental health treatment because they did not have these records at the time and because Mr. Rubalcava could not recall certain details of his treatment. The Court denies Mr. Rubalcava's request for a protective order regarding questioning about his mental health treatment records. Subject to the time limit described below, Defendants may inquire about any records produced or obtained after Mr. Rubalcava's February 8, 2023 deposition and any diagnoses or treatment described therein.

### C. Plaintiff's Counsel's Objections and Instructions

The parties disagree about whether Defendants should be afforded more than the nearly seven hours they have already used to question Mr. Rubalcava.[1]

"Unless otherwise stipulated or ordered by the court, a deposition is limited to one day of 7 hours. The court must allow additional time consistent with Rule 26(b)(1) and (2) if needed to fairly examine the deponent or if the deponent, another person, or any other circumstance impedes or delays the examination." Fed. R. Civ. P. 30(d)(1).[2] Absent a stipulation, "[t]he party seeking a

---

[1] It is not clear whether the lengthy, on-the-record discussion the parties' counsel had about what Mr. Rubalcava would be permitted to answer were counted against Defendants' deposition time.

[2] Rule 26(b)(1) permits discovery of nonprivileged matters that are relevant to a party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P 26(b)(1). Rule 26(b)(2) requires the Court to limit discovery that is unreasonably cumulative or duplicative, or that the party seeking discovery has had ample opportunity to obtain, or that is outside the scope of permissible discovery described in Rule 26(b)(1). Fed. R. Civ. P. 26(b)(2).

court order to extend the examination, or otherwise alter the limitations, is expected to show good cause to justify such an order." Fed. R. Civ. P. 30, Advisory Committee Notes to 2000 amendment, subdivision (d).

The Court has reviewed the entire transcript of Mr. Rubalcava's February 8, 2023 deposition. The transcript reflects that Mr. Rubalcava's counsel made frequent objections, particularly during some parts of the deposition, and many of the objections included improper speaking objections and other commentary about the questions and/or the witness's answers. *See, e.g.,* Dkt. 173-3 (Rubalcava dep. 14:20-15:14, 22:7-8, 27:18-19, 69:18-21, 96:19-22, 111:3-10, 112:23-113:12, 117:1-2, 127:19-22, 128:15-23, 134:3-18, 142:19-143:16, 147:6-12, 149:24-153:3, 166:12-167:9, 170:3-14, 171:17-172:12, 178:1-179:22). These speaking objections and commentary disrupted and delayed Mr. Rubalcava's deposition.

Mr. Rubalcava suggests that Defendants wasted at least some of their deposition time by pursuing irrelevant and inappropriate lines of inquiry. *See* Dkt. No. 174 at 4. However, the questions Mr. Rubalcava cites as examples of improper questioning appear to be directly related to the kinds of injuries he claims to have suffered. It was not unreasonable for Defendants to explore these matters with him in deposition.

For these reasons, the Court is persuaded that Defendants are entitled to additional time for the examination of Mr. Rubalcava because they have shown that his counsel's conduct during the deposition impeded their ability to question him and because more time is required to fairly question Mr. Rubalcava about his criminal history, gang involvement, and mental health treatment records, as described above.

## III. CONCLUSION

Defendants may take a further deposition of Mr. Rubalcava regarding the following subjects:

1) Mr. Rubalcava's criminal history and gang-related activities, including his juvenile criminal history, misdemeanor convictions, and arrests for uncharged conduct. The questioning should focus on how Mr. Rubalcava's experiences and conduct may have impacted his mental health and other interests for which he claims injury and damages

7

and how his adult criminal history and adult gang involvement, if any, bear on his allegations that Defendants fabricated evidence of his participation in gang-related activity. Defendants should avoid questioning solely designed to discover whether Mr. Rubalcava committed crimes for which he was never arrested or charged.

2) Mr. Rubalcava's mental health treatment records obtained or produced after the February 8, 2023 deposition and any diagnoses or treatment described therein.

The further deposition will be limited to 3.5 hours of questioning by Defendants. Mr. Rubalcava's counsel must not make speaking objections. For purposes of this deposition, any objections to the form of the question shall be limited to a statement that counsel "objects to the form of the question," or words to that effect.

The parties shall confer regarding a mutually agreeable date and time for Mr. Rubalcava's further deposition.

**IT IS SO ORDERED.**

Dated: May 12, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge