# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

LIONEL RUBALCAVA,

              Plaintiff,

    v.

CITY OF SAN JOSE, et al.,

              Defendants.

Case No.  20-cv-04191-BLF

**ORDER RE MOTIONS *IN LIMINE***

[Re:  ECF 266, 267, 268, 269, 271, 273, 274, 275, 276, 277]

The Court held the Final Pretrial Conference in this case on April 23, 2024, at which time it issued oral rulings on the parties' Motions *in Limine*.[1]  Those rulings are summarized as follows:

### PLAINTIFF'S MOTIONS *IN LIMINE*

**(1)**    **Plaintiff's Motion *in Limine* No. 1 to Introduce Evidence of Innocence (ECF 266)**

In his Motion *in Limine* No. 1, Plaintiff seeks an order allowing him to introduce evidence that he is innocent of the shooting that gave rise to his trial and conviction for attempted murder. Defendants oppose the motion and affirmatively seek to exclude evidence of innocence in their own Motion *in Limine* No. 1, which is opposed by Plaintiff.  The Court considers the arguments presented in both sides' motions on evidence of innocence, and the oppositions thereto, in ruling on Plaintiff's Motion *in Limine* No. 1.

---

[1] The Court engaged in a colloquy with counsel regarding its jurisdiction to address pretrial motions given Defendants' interlocutory appeal of the denial of qualified immunity.  *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001) (interlocutory appeal divests district court of jurisdiction over issues involved in appeal); *Chuman v. Wright*, 960 F.2d 104, 105 (9th Cir. 1992) (appeal of denial of qualified immunity divests district court of jurisdiction to proceed with trial).  The Court stated its view that it retains jurisdiction to rule on the parties' pending Motions *in Limine*, as those motions address issues distinct from the denial of qualified immunity, and no party objected.

Plaintiff asserts that evidence of his innocence should be admitted at trial because it is highly relevant to both liability and damages.  Defendants argue that evidence of Plaintiff's innocence should be excluded because such evidence is irrelevant to Plaintiff's claims, the prejudicial effect of such evidence would outweigh any probative value, and the evidence of innocence consists in large part of hearsay.

**a.** **Relevance**

Under Federal Rule of Evidence 401, "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "Evidence Rule 402 provides that relevant evidence is admissible unless another rule or federal law provides otherwise, and that irrelevant evidence is inadmissible."  *Crawford v. City of Bakersfield*, 944 F.3d 1070, 1077 (9th Cir. 2019); *see also* Fed. R. Evid. 402 (providing that relevant evidence is admissible unless precluded by the United States Constitution, a federal statute, the Federal Rules of Evidence, or a rule prescribed by the United States Supreme Court).  "Rule 401's basic standard of relevance . . . is a liberal one."  *Crawford*, 944 F.3d at 1077 (quotation marks and citation omitted, ellipses in original).

Applying this liberal standard of relevance, the Court finds that evidence of Plaintiff's innocence is relevant to both liability and damages.  With respect to liability, Plaintiff's claims are grounded primarily in his contentions that Defendants fabricated their police reports regarding witness identifications of Plaintiff as the shooter (Claim 1 for fabrication of evidence), failed to disclose the true circumstances of the eyewitness identifications of Plaintiff (Claim 2 for violations of *Brady*), and maliciously prosecuted him based on the allegedly fabricated police reports, without any substantial evidence of his guilt (Claim 3 for malicious prosecution).  A central disputed issue is what happened during the initial, unrecorded identification procedures Defendants conducted with three trial witnesses:  shooting victim Raymond Rodriguez, his brother Eric Millan, and his neighbor David Gonzalez, Jr.  Plaintiff claims that those witnesses did *not* immediately and unequivocally identify Plaintiff as the shooter as described in Defendants' police reports, and that Defendants falsified their police reports about the identification procedures in

United States District Court
Northern District of California

violation of Plaintiff's civil rights.  At Plaintiff's criminal trial, the Government argued that it was highly unlikely that multiple witnesses would have positively identified Plaintiff as the shooter if he were not the shooter.  Using similar logic, Plaintiff argues in the present case that it is highly unlikely that multiple witnesses would have positively identified an *innocent man* as the shooter absent misconduct by the defendant officers.  The Court agrees with Plaintiff that proof of his innocence has a tendency to make it more probable that Defendants falsified their police reports, and less probable that Defendants accurately reported that three separate witnesses unequivocally identified Plaintiff as the shooter.

Defendants argue that after-acquired evidence of Plaintiff's innocence, which was not known to Defendants at the time of the investigation, has no relevance to whether Defendants fabricated evidence or engaged in other alleged misconduct.  Defendants contend that the only relevant facts are those known to Defendants at the time of the investigation.  That argument is foreclosed by the Ninth Circuit's holding in *Crawford*, a case arising from a police officer's fatal shooting of the plaintiff's son, Michael Dozer.  *See Crawford*, 944 F.3d at 1072.  Dozer had a history of schizophrenia and was behaving in an erratic fashion at a gas station when approached by the officer.  *See id.* at 1074-75.  The officer shot and killed Dozer less than a minute after arriving on the scene.  *See id.* at 1074.  The plaintiff sued the officer and his city employer under federal and state law, arguing at trial that Dozer was mentally ill, the officer was trained to recognize signs of mental illness and respond with minimal force, and the officer acted negligently and with excessive force when he failed to act pursuant to that training instead of shooting Dozer.  *See id.* at 1077-78.  After a three-day trial, the jury returned a special verdict finding that the plaintiff had failed to prove the officer acted negligently or with excessive force, and the district court entered judgment for the defendants.  *See id.* at 1076.

The plaintiff appealed, asserting that the district court erred in excluding her proposed testimony regarding her own observations of Dozer's past conduct arising from his mental illness.  *See Crawford*, 944 F.3d at 1078.  The district court found that the plaintiff's proposed testimony was not relevant on the ground that, at the time of the shooting, the officer did not know about the past events to which the plaintiff would have testified.  *See id.*  The Ninth Circuit held that the

1   exclusion of the plaintiff's proposed testimony was reversible error, reasoning that: "Evidence

2   that Dozer had *previously* behaved in ways consistent with mental illness and had been taken to

3   mental health providers for treatment, makes it more likely that he *continued* to suffer from mental

4   illness on the day of the shooting.  In turn, whether Dozer was *in fact* mentally ill that day is

5   relevant to whether he would have *appeared* to be mentally ill, and thus to whether [the officer]

6   knew or should have known that Dozer was mentally ill; after all, the existence of some

7   underlying fact tends to make it more likely that a person knew or should have known that fact."

8   *Id*. at 1078-79.

9       *Crawford* makes clear that facts not known to officer defendants at the time of the conduct

10  giving rise to the plaintiff's claims may be relevant to a determination of liability.  In *Crawford*,

11  evidence that Dozer in fact was mentally ill was relevant to the plaintiff's claim that the defendant

12  officer violated Dozer's rights by shooting him.  Here, evidence that Plaintiff in fact is innocent is

13  relevant to Plaintiff's claim that Defendants violated Plaintiff's rights by falsifying their police

14  reports.

15      Defendants cite several cases for the proposition that evidence of a civil rights plaintiff's

16  guilt or innocence is irrelevant to claims like those at issue here.  Those cases are distinguishable,

17  as the courts did not address whether evidence of the plaintiff's innocence made it more likely that

18  the defendant officers violated the plaintiff's civil rights.  For example, in *Milla v. City of Los*

19  *Angeles*, No.: 2:16-cv-00134-FWS-MRW, 2023 WL 4291467, at *2 (C.D. Cal. June 9, 2023), the

20  plaintiff asserted federal constitutional claims for unlawful arrest without probable cause,

21  malicious prosecution, and fabrication of evidence, all arising from police officers' alleged

22  misconduct during their investigation of an attempted murder.  The district court granted the

23  plaintiff's motion *in limine* to exclude evidence that a jury found him guilty, and also granted the

24  defendants' motion *in limine* to exclude after-acquired evidence of actual innocence, holding that

25  "[e]vidence of Plaintiff's guilt or innocence is not relevant to Plaintiff's claims," because those

26  claims turned solely on proof of the defendants' allegedly culpable conduct.  *See id.* at *5, 11.  In

27  *Wilson v. City of Los Angeles*, No. CV 18-5775-KS, 2020 WL 7296507, at *5 (C.D. Cal. Dec. 9,

28  2020), another civil rights case arising from police officers' alleged misconduct during a criminal

4

1    investigation, the district court excluded evidence of the plaintiff's guilt or innocence under the

2    rationale that "demonstrating Defendants' liability on these claims requires only evidence of the

3    Defendants' conduct, not Plaintiff's culpability (or lack thereof) for the Hanson murder." *Wilson*

4    *v. City of Los Angeles*, No. CV 18-5775-KS, 2020 WL 7296507, at *5 (C.D. Cal. Dec. 9, 2020).

5    In neither case did the court address the relevance of a plaintiff's innocence when such evidence

6    made it more likely that the defendants engaged in culpable conduct.  Thus, this Court does not

7    find *Milla*, *Wilson*, and the other cases cited by Defendants on the issue of innocence to be helpful

8    here, as they do not address the specific relevance argument advanced by Plaintiff and supported

9    by *Crawford*.

10        Neither side cites controlling Ninth Circuit authority as to the relevance of innocence to the

11   issue of damages in a civil rights case.  However, decisions from other circuits hold that evidence

12   of innocence is relevant to damages, because "[a] jury that believed the plaintiff was guilty of the

13   crime would award lower damages because the imprisonment is attributable to the person's own

14   actions as well as the civil defendants' misbehavior[.]"  *Parish v. City of Elkhart*, 702 F.3d 997,

15   999 (7th Cir. 2012); *see also Ayers v. City of Cleveland*, 773 F.3d 161, 169 (6th Cir. 2014)

16   (finding evidence of innocence relevant to issue of damages in civil rights action alleging

17   fabrication of evidence and *Brady* violations).  Put another way, "if a jury believes a malicious

18   prosecution plaintiff was factually innocent, the jury might award more emotional distress

19   damages – because a criminal defendant who knows he or she is innocent likely feels significantly

20   more distress than one who knows he or she is guilty but nonetheless sees a chance to have the

21   charges dismissed due to police misconduct."  *Sanchez v. Duffy*, 416 F. Supp. 3d 1131, 1155-56

22   (D. Colo. 2018).  Defendants do not dispute the relevance of innocence evidence to the issue of

23   damages, although as discussed below they do argue that the issues of liability and damages

24   should be bifurcated.

25        Under the liberal standard applicable to a determination of relevance under Rule 401, *see*

26   *Crawford*, 944 F.3d at 1077, the Court finds that evidence of Plaintiff's factual innocence is

27   relevant to both liability and damages.  At the hearing, the Court indicated that it might permit

28   some types of innocence evidence, such testimony of the eyewitnesses and the superior court's

United States District Court
Northern District of California

finding of actual innocence, but not other types of evidence, such as new expert testimony regarding the location of Plaintiff's cellular telephone at the time of the shooting. The Court has reconsidered, and now concludes that all evidence of factual innocence is relevant, including the cellular telephone evidence. However, the Court would entertain a defense request for a limiting instruction regarding the cellular telephone evidence.

### b.   Prejudice

"Rule 403 provides that relevant evidence may be excluded, among other reasons, if its probative value is substantially outweighed by the danger of unfair prejudice." *United States v. LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001) (quotation marks and citation omitted); *see also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.").

Defendants argue that any probative value of innocence evidence would be outweighed by the danger that such evidence would result in unfair prejudice to Defendants. According to Defendants, the jury will conflate the issue of Plaintiff's innocence with the distinct issue of Defendants' civil liability, and will attempt to compensate Plaintiff for being wrongfully convicted by improperly imposing liability on Defendants. This argument assumes that the jury will ignore instructions from the Court regarding their role. However, "[a] jury is presumed to follow its instructions." *Spencer v. Peters*, 857 F.3d 789, 803 (9th Cir. 2017) (quotation marks and citation omitted). Defendants also argue that holding a trial-within-a-trial on the issue of innocence likely would complicate the trial and confuse the jury, citing cases in which district courts exercised their discretion to exclude evidence of innocence on those bases. *See, e.g., Vargas v. City of Los Angeles*, No. 2:16-cv-08684-SVW-AFM, 2020 WL 10789578, at *8 (C.D. Cal. Feb. 18, 2020) ("[T]he introduction of 'factual innocence' evidence would have further confused the jury with substantial testimony on a collateral issue."). This Court does not choose to exercise its discretion in the same fashion, given the relevance of evidence of Plaintiff's innocence and the availability of appropriate jury instructions to avoid confusion regarding the jury's role.

Defendants' argument that their position is supported by *Smith v. Depasquale*, 727 F.

6

App'x 411 (9th Cir. 2018), is not well-taken.  In *Smith*, the Ninth Circuit found that the district court had not abused its discretion under Rule 403 in prohibiting the parties from using the terms "guilt" and "innocence" at trial.  *See id*. at 411.  However, that determination was made in the context of the Ninth Circuit's observation that the district court had permitted the plaintiff "to present evidence that supported his innocence and established his wrongful conviction."  *Id*.  In fact, the Ninth Circuit assumed that the district court's exclusion of evidence that the California Victim Compensation and Government Claims Board ("VCB") had found the plaintiff "innocent" was error, but concluded that such error was harmless in light of the district court's admission of evidence that the police department and district attorney's office lost confidence in the plaintiff's conviction after the sole eyewitness at the plaintiff's murder trial recanted, and that the superior court had vacated the plaintiff's conviction.  *See id*. at 411-12.

Defendants have failed to show that evidence of innocence would be unduly prejudicial and thus subject to exclusion in the present case.  Defendants' prejudice argument is particularly unpersuasive given Defendants' position throughout this litigation that Plaintiff actually committed the crime for which he was convicted.  Under those circumstances, the Court finds that Plaintiff must be allowed to present evidence of his actual innocence to balance the scales. Moreover, the Court declines to adopt Defendant's suggestion that any evidence of innocence be limited to a stipulated statement that Plaintiff's conviction was vacated.  Such a statement could give rise to a misimpression that Plaintiff's conviction was vacated on a technicality.

### c. Hearsay

Defendants assert that Plaintiff's evidence of innocence consists largely of hearsay. However, they support that assertion with a single line of argument that "[t]he state-court 'factual innocence' order – which necessarily consists of hearsay, Fed. R. Evid. 801, 802 – has a specialized meaning not understood by a lay jury."  Defs.' MIL 1 at 3, ECF 273.  Defendants' hearsay argument is not sufficiently fleshed out for this Court to address here.

### d. Conclusion re Evidence of Innocence

Plaintiff's Motion *in Limine* No. 1, seeking an order allowing him to introduce evidence that he is innocent, is GRANTED.

**(2)    Plaintiff's Motion *in Limine* No. 2 to Exclude Evidence of Plaintiff's Alleged Bad Acts (ECF 267)**

In his Motion *in Limine* No. 2, Plaintiff seeks to exclude "bad acts" evidence, including: Plaintiff's (1) criminal history, including his juvenile record, arrests, and charges that did not lead to any convictions; (2) school and prison disciplinary records; (3) use of drugs and alcohol; and (4) dating history.  In opposition, Defendants argue that granting Plaintiff's motion would foreclose a significant amount of relevant evidence.

Plaintiff argues that his prior convictions cannot be used for impeachment purposes under Federal Rule of Evidence 609(b) because they are more than a decade old and are not probative of truthfulness.  *See* Fed. R. Evid. 609(b) (Evidence of conviction more than 10 years old is admissible only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect.").  Plaintiff also argues that neither his juvenile history nor arrests that did not lead to convictions can be used for impeachment purposes.  *See* Fed. R. Evid. 609(d) (evidence of a juvenile adjudication is admissible only in a criminal case and only if certain requirements are met); *U.S.A. v. Defendant(s)*, No. 2:19-CR-00595-CAS-1, 2021 WL 1127163, at *6 (C.D. Cal. Mar. 24, 2021) ("Typically, evidence of prior arrests is not probative of truthfulness and thus may not be inquired into on cross examination.").  To the extent Defendants seek to use Plaintiff's criminal history as propensity evidence under Federal Rule of Evidence 404(b), Plaintiff argue that his convictions do not fall within one of the limited exceptions to the general rule that prior crimes are not admissible to prove a person's character and conduct in accordance with that character.  *See* Fed. R. Evid. 404(b)(1), (b)(2).  Even if any evidence regarding his criminal history were admissible, Plaintiff argues, it should be excluded as unduly prejudicial under Rule 403.  Plaintiff likewise argues that any evidence regarding his drug and alcohol use, and his dating history, should be excluded as irrelevant under Rule 401 and unduly prejudicial under Rule 403.

In response, Defendants assert that their knowledge of Plaintiff's criminal history and gang activity at the time of his arrest is highly relevant to the reasonableness of their conduct in arresting him.  Defendants also contend that evidence regarding Plaintiff's criminal history and

gang activity is relevant to damages, arguing that "prison for a hardened criminal is not the same as prison for the first-time offender."  Defs.' Opp. to Pl.'s MIL 2 at 2, ECF 296.

The parties' briefing on this motion does not provide sufficient information regarding what bad acts evidence Defendants will seek to admit, and the purpose of such evidence.  To the contrary, it appears that Defendants are not intending to introduce such evidence as bad acts, but only to demonstrate information known to them during the investigation.  In essence, Plaintiff asks the Court to issue a blanket ruling in a vacuum.  The Court cannot do so, and therefore will deny Plaintiff's motion without prejudice to Plaintiff's ability to make all appropriate objections to proffered bad acts evidence at trial.  Based on the record before it, the Court can offer only the general observations that Plaintiff will not be permitted to sanitize the evidence presented to the jury to omit all reference to his criminal history and gang affiliation, which reasonably could have caused Defendants to suspect Plaintiff of involvement in the shooting.  However, Defendants will not be permitted to use bad acts evidence absent a showing that the evidence is admissible, relevant, and not unduly prejudicial to Plaintiff.

Plaintiff's Motion in Limine No. 2 is DENIED without prejudice to objections to bad acts evidence at trial.

**(3)    Plaintiff's Motion *in Limine* No. 3 to Exclude Gang-Related Evidence (ECF 268)**

In his Motion *in Limine* No. 3, Plaintiff seeks to exclude evidence of his prior gang history beyond the undisputed facts that he was formerly affiliated with the Norteño gang West Side Mob, and that he was known to the police because of that affiliation.  Plaintiff cites authority for the general proposition that "evidence relating to gang involvement will almost always be prejudicial and will constitute reversible error."  *Kennedy v. Lockyer*, 379 F.3d 1041, 1055 (9th Cir. 2004).  In opposition, Defendants argue that Plaintiff's affiliation with West Side Mob, and evidence of gang activity involving West Side Mob, are central to this case.  Defendants argue that their knowledge of Plaintiff's gang affiliation goes to the reasonableness of their conduct.  Defendants also argue that the issue of causation – whether their alleged misconduct caused Plaintiff's 17-year incarceration – must be determined in the context of all the evidence that was before the jury at Plaintiff's criminal trial.

United States District Court
Northern District of California

1   Plaintiffs again ask the Court to rule in a vacuum.  Some gang-related evidence clearly will

2   be admissible as directly relevant to Plaintiff's claim that Defendants fabricated a feud between

3   two Norteño factions, and to the reasonableness of Defendants' actions in focusing their

4   investigation on Plaintiff.  However, it appears that other gang-related evidence, for example,

5   evidence of gang-related crimes committed by third parties, may be only marginally relevant and

6   unduly prejudicial to Plaintiff.  The Court cannot offer meaningful guidance regarding the

7   admissibility of gang-related evidence without knowing how Plaintiff's case will be presented and

8   what specific evidence will be offered by Defendants.

9   Plaintiff's Motion in Limine No. 3 is DENIED without prejudice to objections to gang-

10   related evidence at trial.

11   **(4)   Plaintiff's Motion *in Limine* No. 4 to Exclude Impermissible Third-Party Evidence**

12   **and Testimony (ECF 269)**

13   In his Motion *in Limine* No. 4, Plaintiff seeks to exclude three separate categories of

14   evidence:  (1) inadmissible testimony from third party witnesses regarding legal opinions or

15   opinions on credibility; (2) evidence or argument that third parties are responsible for Plaintiff's

16   wrongful conviction; and (3) evidence or argument about settlement, including with dismissed

17   parties, or payment under California's erroneous conviction statute.  In essence, Plaintiff has

18   attempted to expand the Court's limit of five motions *in limine* per side by combining three

19   motions *in limine* into one.  The Court addresses only the first motion and strikes the other two,

20   because they exceed the permitted number of motions *in limine*.

21   Plaintiff's motion to exclude testimony from third party witnesses is directed to the

22   prosecutor in Plaintiff's criminal case, Deputy District Attorney Mark Duffy.  Plaintiff seeks to

23   preclude Mr. Duffy from offering the legal conclusion that there was probable cause to charge and

24   prosecute Plaintiff, either as an expert witness or as a lay witness, citing a number of cases

25   precluding witnesses from testifying to a matter of law amounting to a legal conclusion.  *See, e.g.,*

26   *Trulove v. D'Amico*, No. 16-CV-050 YGR, 2018 WL 1090248, at *1 (N.D. Cal. Feb. 27, 2018)

27   (excluding expert testimony of former district attorney as to whether there was probable cause to

28   charge the plaintiff, among other things).  Plaintiff also expresses concern that Mr. Duffy will

10

1    attempt to buttress the testimony of other witnesses by vouching for such testimony or stating that

2    he believed the testimony.

3           In opposition, Defendants point out that they can defeat Plaintiff's claims of fabrication

4    and malicious prosecution by establishing that Mr. Duffy would have brought charges, and the

5    judge at the preliminary hearing would have found probable cause, even if the allegedly fabricated

6    evidence were disregarded.  *See Caldwell v. City & Cnty. of San Francisco*, 889 F.3d 1105, 1117-

7    18 (9th Cir. 2018).  Defendants argue that under these circumstances, it is entirely appropriate for

8    them to present Mr. Duffy's testimony about what facts he knew and relied on in going forward

9    with the prosecution of Plaintiff.

10          The Court agrees with Plaintiff that Mr. Duffy may not testify as to legal conclusions such

11   as whether there was probable cause to charge Plaintiff.  Nor may Mr. Duffy vouch for the

12   credibility of witnesses who will testify at trial.  However, because Mr. Duffy was the prosecutor

13   who made the charging decision, Mr. Duffy may testify as to what information he relied on in

14   making that decision.

15          Plaintiff's Motion in Limine No. 4 is GRANTED as to expert or lay opinion regarding

16   legal conclusions.  However, Mr. Duffy may testify as to the bases for his charging decision and

17   any other matter within his knowledge as a percipient witness.  This ruling is without prejudice to

18   Plaintiff's right to make appropriate objections to Mr. Duffy's testimony at trial.

19   **(5)    Plaintiff's Motion *in Limine* No. 5 to Exclude Inadmissible Opinions from Dr. Gaskell**

20   **and Dr. Steward (ECF 271)**

21          In his Motion *in Limine* No. 5, Plaintiff seeks to limit the testimony of Defendants' rebuttal

22   psychiatric expert, Dr. Steven Gaskell, and to exclude the opinions of Defendants' economics

23   expert, Dr. Dwight Steward.  Plaintiff again attempts to expand the Court's limit of five motions *in*

24   *limine* per side, this time by combining two motions addressing two different experts.  The Court

25   considers only the first motion addressing Dr. Gaskell, and strikes the second motion addressing

26   Dr. Steward.

27          As part of his damages case, Plaintiff intends to offer the testimony of his psychiatric

28   expert, Dr. George Woods, regarding the effects of incarceration.  Dr. Woods opines that

United States District Court
Northern District of California

11

United States District Court
Northern District of California

Plaintiff's incarceration has caused him significant psychological problems, including depression, anxiety, and PTSD.  Defendants intend to offer the opinion of their rebuttal psychiatric expert, Dr. Gaskell, that Dr. Woods' opinions regarding the effects of incarceration fail to account for the psychological effects of other experiences Plaintiff had before going to prison.  Among other things, Dr. Gaskell opines that Plaintiff suffered from antisocial personality disorder.

Plaintiff contends that Dr. Gaskell's opinion regarding antisocial personality disorder goes beyond rebuttal of Dr. Woods' opinion and should be excluded.  Rebuttal experts may testify "solely to contradict or rebut evidence on the same subject matter identified" by the opposing expert witness.  *Optronic Techs., Inc. v. Ningbo Sunny Elec. Co.*, No. 5:16-CV-06370-EJD, 2019 WL 4780183, at *6 (N.D. Cal. Sept. 30, 2019), aff'd, 20 F.4th 466 (9th Cir. 2021); *see also* Fed. R. Civ. P. 26(a)(2)(D)(ii).  Defendants argue that Dr. Gaskell's opinion is proper rebuttal to Dr. Woods' diagnosis.  Defendants also argue that the Court should not consider Plaintiff's motion to exclude Dr. Gaskell on the merits, because it should have been brought during the *Daubert* proceedings previously heard by the Court.

The Court finds unpersuasive Defendant's argument that Plaintiff was required to raise his challenge to Dr. Gaskell's opinion in the *Daubert* proceedings.  In the Court's view, the motion is not properly characterized as a *Daubert* motion, because it does not challenge Dr. Gaskell's qualifications or methodology.  Rather, the motion asserts that Dr. Gaskell's opinion exceeds the scope permitted under Federal Rule of Civil Procedure 26.  However, the Court agrees with Defendants that Dr. Gaskell's opinion constitutes proper rebuttal.  Dr. Woods has offered an opinion that Plaintiff has suffered certain symptoms and psychological conditions as a result of his prison sentence, and Dr. Gaskell has offered a rebuttal opinion regarding the cause of Plaintiff's symptoms and Plaintiff's diagnosis.

P Motion *in Limine* No. 5 is DENIED.  Dr. Gaskell's testimony is limited to the issue of Plaintiff's damages.

### DEFENDANTS' MOTIONS *IN LIMINE*

**(1)     Defendants' Motion *in Limine* No. 1 to Exclude Improper Evidence and Argument Regarding Innocence (ECF 273)**

Defendants' Motion *in Limine* No. 1 seeks to exclude evidence and argument regarding Plaintiff's innocence.  For the reasons discussed above in the section addressing Plaintiff's Motion *in Limine* No. 1, Defendants' Motion *in Limine* No. 1 is DENIED.

**(2)     Defendants' Motion *in Limine* No. 2 to Bifurcate Trial into Separate Liability and Damages Phases (ECF 274)**

In their Motion *in Limine* No. 2, Defendants move to bifurcate the trial into separate liability and damages phases.  Plaintiff opposes bifurcation.

"Federal Rule of Civil Procedure 42(b) permits a court to order a separate trial of separate claims or issues '[f]or convenience, to avoid prejudice, or to expedite and economize.'"  *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) (quoting Fed. R. Civ. P.42(b)).  A court might bifurcate a trial to avoid thorny questions by dealing with easier, dispositive issues, or to avoid the risk of prejudice.  *See id.*  Moreover, "Rule 42(b) gives courts the authority to separate trials into liability and damage phases."  *Id.* (quotation marks and citation omitted).

Defendants assert that bifurcation is necessary in this case because Plaintiff likely will present highly emotional testimony regarding his life before and after incarceration, and the hardships he endured while in prison.  Defendants argue that they will be unduly prejudiced if the jury hears that evidence during the liability phase, because the jury is likely to feel sympathy for Plaintiff's suffering and for that reason hold Defendants liable despite Plaintiff's failure to prove the elements of his claims.  Defendants cite several cases in which the district court exercised its discretion to bifurcate, or even trifurcate, to avoid that risk.  *See, e.g., Ignacio Ixta, Jr.*, No. 2:22-cv-02468-MCS-AFM, 2024 WL 650195, at *8 (C.D. Cal. Feb. 2, 2024) (in civil rights action alleging *Brady* violations and related claims, district court trifurcated trial to address in turn liability, affirmative defenses, and damages); *Milla*, 2023 WL 4291467, at *6 ("The court finds bifurcation would avoid potential confusion of issues for the jurors and prevent prejudice to both parties by limiting the scope of evidence in the first phase to liability.").

Plaintiff contends that bifurcation is not warranted, citing a number of cases holding that "bifurcation is the exception rather than the rule of normal trial procedure within the Ninth Circuit." *Medtronic Minimed Inc. v. Animas Corp.*, No. CV 12-04471 RSWL RZX, 2013 WL 3233341, at *1 (C.D. Cal. June 25, 2013) (quotation marks and citation omitted); *see also French v. City of Los Angeles*, No. EDCV 20-00416 JGB (SPx), 2022 WL 2189649, at *13 (C.D. Cal. May 10, 2022) (denying motion for judgment as a matter of law for failure to bifurcate and reiterating that bifurcation was not warranted in excessive force case despite inflammatory nature of testimony regarding physical and mental injuries).  Plaintiff argues that bifurcation could motivate the jury to reach a defense verdict so they would not have to go on to a second phase, and that in the event the jury were to find liability, bifurcation would needlessly prolong the trial.

Having considered the parties' arguments in light of the relevant case law, the Court in the exercise of its discretion declines to bifurcate the liability and damages phases here.  It does appear that bifurcation is the exception rather than the rule in the Ninth Circuit.  Moreover, one of the key issues in the case – the issue of Plaintiff's factual innocence – relates to both liability and damages as discussed above.  The same witnesses would have to testify on that issue twice if the Court were to grant the motion to bifurcate.  Thus, bifurcation would not serve judicial economy, and would needlessly prolong the trial unless the jury were to find Defendants not liable.  With respect to Defendants' concern that jury sympathy will be elicited by Plaintiffs' evidence regarding the hardships and effects of incarceration, district courts in the Ninth Circuit routinely address such concerns by appropriate jury instructions rather than bifurcation.  *See, e.g., A.G.1 v. City of Fresno*, No. 1:16-CV-1914-JLT-SAB, 2023 WL 3752008, at *7 (E.D. Cal. June 1, 2023) (finding that concerns about potential prejudice may be addressed with appropriate limiting instruction rather than bifurcation); *Scott v. City of Pasadena*, No. CV0707856MMMAJWX, 2014 WL 12806259, at *8 (C.D. Cal. Feb. 6, 2014) (finding in civil rights case that "no additional convenience or efficiency will be achieved if liability and damages are bifurcated").

The Court is not persuaded by Defendants' argument that the Ninth Circuit's opinion in *Estate of Diaz* compels a different result.  *Estate of Diaz* arose from a police officer's fatal shooting of Manuel Diaz, after which a civil rights action was brought by Diaz's estate and

United States District Court
Northern District of California

mother.  *See Estate of Diaz*, 840 F.3d at 595.  "[U]nder the guise of impeaching [the mother's] testimony that she loved her son, Defendants introduced (over repeated objection) photographs of Diaz posing with firearms and making gang signs."  *Id.* at 601.  Defendants introduced other inflammatory and prejudicial evidence as well.  *See id.*  The Ninth Circuit found that it was entirely unclear whether this evidence was relevant to liability, and concluded that "[e]ven assuming that a portion of this evidence had some relevance to damages, it never should have been combined with the liability phase."  *Id.* at 602.  Noting that the district court had already bifurcated punitive damages, the Ninth Circuit determined that the district court abused its discretion by not also "[b]ifurcating from the liability phase the testimony actually relevant to compensatory damages" so as to avoid prejudice to the plaintiffs.  *Id.*

The Ninth Circuit made clear that it was "not announcing a rule that requires district courts always, usually, or frequently to bifurcate damages from liability."  *Estate of Diaz*, 840 F.3d at 603.  To the contrary, the *Estate of Diaz* court emphasized that "[d]istrict courts still have the broad discretion to make these decisions."  *Id.*  However, where "graphic and prejudicial evidence about the victim has little, and in large part no, relevance to the liability issue, district courts should bifurcate to avoid situations like the one" addressed in *Estate of Diaz*.  *Id.*  The present case does not involve the same concerns.  Here, much of the evidence regarding liability and damages is intertwined, and the Court is satisfied that any evidence relating solely to damages may be addressed with appropriate limiting instructions.

Motion *in Limine* No. 2 is DENIED.

**(3)    Defendants' Motion *in Limine* No. 3 to Order Witness Testimony and Preclude Leading Questions (ECF 275)**

In their Motion *in Limine* No. 3, Defendants ask the Court for an order  (1) permitting Defendants to examine witnesses Raymond Rodriguez and Eric Millan before Plaintiff; (2) prohibiting Plaintiff from using the same witnesses' deposition testimony for any purpose; and (3) prohibiting leading questions of these witnesses during any examination at trial by Plaintiff, including any question prefaced with the phrase "would it be fair to say."  The gist of Defendants' motion is their assertion that Plaintiff's counsel will violate the Federal Rules of Evidence when

15

1    questioning two critical witnesses Plaintiff intends to call during his case in chief – victim

2    Rodriguez and his brother Millan – and that to prevent such violations the Court should depart

3    from standard trial procedures to allow Defendants to question the witnesses first.  Defendants

4    also ask that Plaintiff be precluded from using those witnesses' deposition testimony, which

5    according to Defendants was elicited in violation of the Federal Rules of Evidence, or to ask those

6    witnesses leading questions under any circumstances.

7        Plaintiff opposes the motion, arguing that under standard trial procedures he is allowed to

8    present his case first, and to order his witnesses as he sees fit.  Plaintiff also disputes Defendants'

9    characterization of the witnesses' deposition testimony, as well as Defendants' assertion that

10   Plaintiff cannot establish that the witnesses may be treated as hostile and thus asked leading

11   questions.  In essence, Plaintiff contends that his counsel know how to conduct themselves during

12   trial and that Defendants' counsel may make any objections they deem appropriate.

13       The Court is frankly startled by Defendants' motion to examine *Plaintiff*'s witnesses

14   before Plaintiff does.  The motion does not appear to be supported by any of the cases cited by

15   Defendants.  To the extent Defendants challenge the admissibility of the witnesses' deposition

16   testimony, they are free to use their trial time to ask the Court to review each challenged

17   deposition excerpt.  Defendants are advised that the Court reads slowly and will need the portions

18   before and after each challenged deposition excerpt for context.  Finally, the Court is not in a

19   position to prejudge the manner in which Plaintiff's counsel questions witnesses at trial.

20       Defendants' Motion *in Limine* No. 3 is DENIED.

21   **(4)    Defendants' Motion *in Limine* No. 4 to Exclude Evidence and Argument Regarding**

22   **Dismissed or Abandoned Parties and Claims (ECF 276)**

23       In their Motion *in Limine* No. 4, Defendants ask the Court to exclude evidence and

24   argument regarding dismissed or abandoned parties and claims.  For the most part, the motion is

25   unopposed by Plaintiff.  While Plaintiff disputes Defendants' characterization of the Court's

26   summary judgment ruling as limiting his right to present certain alternate theories of liability to

27   the jury, Plaintiff indicated on the record that he does not intend to pursue those alternate theories

28   at trial.  Plaintiff does ask for clarification that evidence relating to the remaining parties and

United States District Court
Northern District of California

claims is admissible.  For example, while Plaintiff has abandoned previously asserted claims based on alleged witness protection payments, Plaintiff points out that evidence of such payments may be admissible for impeachment under certain circumstances.

Defendants' Motion *in Limine* No. 4 is GRANTED.  This ruling does not preclude Plaintiff from presenting evidence relating to dismissed parties or claims if such evidence also relates to the remaining parties and claims and/or may be used for impeachment.

**(5)**    **Defendants' Motion *in Limine* No. 5 to Preclude Plaintiff from Eliciting Improper Lay Opinions on Policy and Probable Cause (ECF 277)**

In their Motion *in Limine* No. 5, Defendants ask the Court to preclude Plaintiff from asking Defendants about their understanding of SJPD policies.  In opposition, Plaintiff asserts that he may question the defendant officers about their own understanding of the policies governing their conduct, for example, their understanding of identification procedures and what constitutes a positive identification.  The Court agrees, as such testimony would be directly relevant to the jury's assessment of Defendants' state of mind.  Plaintiff also assert that the City of San Jose's Rule 30(b)(6) witness, Stephen Donohue, may be questioned about the City's policies.  The Court agrees, as Mr. Donohue was disclosed as the person most knowledgeable about such policies.  At the hearing, Defendants expressed concern that Mr. Donohue might be asked impermissible hypothetical questions, and Plaintiff represented that no such hypotheticals would be asked.

Defendants' Motion *in Limine* No. 5 is DENIED.


IT IS SO ORDERED.


Dated:  May 6, 2024

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

17